# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BANKRUPTCY COURT

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 20-33233 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## MEC CLASS ACTION SETTLEMENT AGREEMENT

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

This CLASS ACTION SETTLEMENT AGREEMENT ("Settlement Agreement") is entered into by, between, and among, Chesapeake Appalachia, L.L.C., and the named plaintiffs and plaintiffs-intervenors (collectively, "Plaintiffs") in *Demchak Partners Limited Partnership, et. al. v. Chesapeake Appalachia, L.L.C.*, No. 3:13-cv-2289, on behalf of themselves and as the putative class representatives for the Settlement Class defined below.

This Settlement Agreement is entered into to effect a full and final settlement and dismissal with prejudice of all Settled Claims on the terms set forth below, subject to the approval of the Court.

## RECITALS

A.    Plaintiffs, as lessors, and Chesapeake Appalachia, L.L.C. as lessee, are parties to oil and gas leases governing leaseholds in the Commonwealth of Pennsylvania.  The leases implicated in this Settlement contain Market Enhancement Clauses and Ready for Sale or Use Clauses.

B.    Plaintiffs allege in *Demchak* that Chesapeake, among other allegations, underpaid Royalties by deducting Post-Production Costs from Royalties.  Chesapeake denies those claims and further denies that its Royalty payment practices are or were improper.  Chesapeake believes it paid Royalties consistent with the leases and Pennsylvania law.

C.    Class Counsel and counsel for Chesapeake engaged in arm's-length negotiations in the interest of resolving this dispute.  They have met at length and have mediated this dispute with the assistance of third-party mediators, including Judge Edward N. Cahn (ret.) and John W. Perry, Jr.

D.    Chesapeake enters into this Settlement Agreement as part of its broader effort to achieve global resolution across the Commonwealth of Pennsylvania as to any royalty-related litigation or disputes.

E.    While Chesapeake believes this Settlement Agreement can and should be approved to avoid the time, expense, and uncertainty of litigation, in the event the Settlement Agreement does not receive final approval from the Court or is terminated according to its terms, Chesapeake expressly reserves any and all available defenses, including the right to challenge class certification and to insist on individual arbitration or litigation of each Plaintiff's dispute and each Settlement Class Member's dispute.  Plaintiffs likewise reserve their right to proceed with all claims if the Settlement Agreement is not approved.

F.    In light of the investigations undertaken and conclusions reached by the Parties and discussed above, the Parties agree, subject to approval by the Court, to fully and finally compromise, settle, extinguish and resolve the Settled Claims and to dismiss with prejudice *Demchak* under the terms and conditions set forth in this Settlement Agreement.

**AGREEMENT FOR SETTLEMENT PURPOSES ONLY**

This Settlement Agreement is for settlement purposes only. The fact of this Settlement Agreement or any provision herein, the negotiations or proceedings related hereto, and any actions taken hereunder shall <u>not</u> constitute or be construed as (a) any admission of the validity of any claim or any fact alleged by Plaintiffs in *Demchak*; (b) any admission of any wrongdoing, fault, violation of law, breach of contract, or liability of any kind on the part of Chesapeake; (c) admission as to any claim or allegation made in any demand of, action against, or proceeding against Chesapeake; and/or (d) a waiver of any applicable defense, including, without limitation, any applicable statute of limitations. This Settlement Agreement and its exhibits shall not be offered or admissible in evidence against Plaintiffs, Chesapeake, or the Settlement Class Members in any action or proceeding in any forum for any purpose whatsoever, except any action or proceeding brought to enforce its terms.

**AGREEMENT**

In consideration of the mutual promises and covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Plaintiffs, on behalf of themselves and as the class representatives of the Settlement Class, and Chesapeake hereby contract, covenant, and agree that the Settled Claims are fully resolved, settled, compromised, extinguished and dismissed on the merits and with prejudice, subject to the approval of the Court, on the following terms and conditions:

**JURISDICTION**

This Court has jurisdiction over the parties and subject matter of this action pursuant to 28 U.S.C. § 1334.

**DEFINITIONS**

1.    <u>Definitions</u>.    When used in this Settlement Agreement, unless otherwise specifically indicated, the following terms shall have the respective meanings assigned to them in this paragraph 1:

1.1    "Attorneys' Fees" refers to any award of attorneys' fees requested by Class Counsel and awarded by the Court.

1.2    "Bonus" means the monetary payment that a lessee or its affiliate(s) paid to a lessor as consideration for signing an oil and gas lease.

1.3    "*Burkett*" means the arbitration proceeding initiated by Russell E. Burkett and Gayle Burkett against Chesapeake Appalachia, L.L.C.

1.4    "Chapter 11 Cases" means the procedurally consolidated chapter 11 cases of Chesapeake Energy Corporation and its debtor affiliates (Case No. 20-33233) pending in the Court.

1.5    "Chapter 11 Plan" means the joint chapter 11 plan of reorganization approved in the Chapter 11 Cases.

1.6    "Chesapeake" means Chesapeake Energy Corporation, Chesapeake Appalachia, L.L.C., Chesapeake Operating, L.L.C., and Chesapeake Energy Marketing, L.L.C. and their respective subsidiaries, members, affiliates, predecessors in interest, successors in interest, current or former officers and directors, attorneys, and agents.

1.7    "Class Counsel" is defined as follows:

Larry D. Moffett
Law Office of Larry D. Moffett,
PLLCP.O. Box 1418
Oxford, MS 38655

John W. ("Don") Barrett
Barrett Law Group
Post Office Drawer 927
Lexington, MS39095

Daniel E. Seltz
Lieff, Cabraser, Heimann &
Bernstein, LLP
250 Hudson St., 8th Floor
New York, NY 10013

Michelle R. O'Brien
The O'Brien Law Group LLC
2800 Stafford Ave., Box 3034
Scranton, PA 18505

Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, MD 20814

Charles E. Schaffer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Jonathan Cuneo
Cuneo Gilbert & LaDuca LLP
507 C Street NE
Washington, DC 20002

1.8    "Court" means the United States Bankruptcy Court for the Southern District of Texas.

1.9    "Chesapeake's Counsel" means the following attorneys:

Daniel T. Donovan, P.C.
Ragan Naresh, P.C.
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington DC 20004
Tel: 202-389-5000
Fax: 202-389-5200

1.10    "*Demchak*" means the civil action styled *Demchak Partners Limited Partnership, et al. v. Chesapeake Appalachia, L.L.C.*, No. 3:13-cv-2289 on the docket of the United States District Court for the Middle District of Pennsylvania.

1.11    "Excluded Member" means any person or entity who falls within the Settlement Class definition but who elects to be excluded from the Settlement Class and submits a valid Request for Exclusion.

1.12    "Final" means that (a) the Final Judgment is a final, appealable order; and (b) either (i) no appeal has been taken from the Final Judgment as of the date on which all times to appeal therefrom have expired, or (ii) an appeal or other review proceeding of the Final Judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions for rehearing or argument, petitions for rehearing en banc, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in such manner that affirms the Final Judgment in all material respects.

1.13    "Final Judgment" means the Final Judgment and Order of Dismissal to be entered by the Court substantially in the form set forth in Exhibit A upon final approval of the Settlement, as provided in paragraph 8 of this Settlement Agreement.

1.14    "Gas" means natural gas, other than gas that is processed to separate natural gas liquids ("NGLs") from the gas stream in a processing (or similar) plant. Gas is not processed solely because it is passed through a mechanical separator for the removal of liquid hydrocarbons at or near a well.

1.15    "In-basin Index Price" means a per MMBtu price that is the weighted average price of (a) 50% of the Leidy Hub monthly (first of the month) index price ($/MMBtu) as reported in *Inside FERC's Gas Market Report* (published by Platts), and (b) 50% of the TGP Zone 4-300 Leg monthly (first of the month) index price ($/MMBtu) as reported in *Inside FERC's Gas Market Report* (published by Platts). If either the Leidy Hub or TGP Zone 4-300 Leg ceases to be published, Chesapeake will identify a replacement index. If a new hub or sales point is developed in the Marcellus Region and a corresponding index price for it is published by Platts, the Parties shall confer whether to revise the In-Basin Price to also include the new index.

1.16    "Incentive Award Payments" means the amount of any class representative incentive awards granted by the Court and paid pursuant to paragraph 18.7.1.

1.17    "Including" and "include(s)" mean "including or include(s), without limitation."

1.18    "Litigation Expenses" means expenses incurred by Plaintiffs or Class Counsel in pursuing Demchak and/or Burkett, and/or negotiating, preparing or presenting to the Court the Settlement Agreement, including expert witness fees, consultant fees, investigation expenses, deposition expenses, copying charges, long distance telephone calls, expenses for meeting with and communicating with clients, fax charges, computer research charges, travel expenses, court costs, arbitrators' fees, and mediator fees.

1.19    "Marcellus Region" refers to the area encompassing the following Pennsylvania counties: Bradford; Lycoming; Sullivan; Susquehanna; Tioga; Wyoming; Potter; McKean; Wayne.

1.20    "Market Enhancement Clause" means Royalty payment clauses or provisions in an oil and gas lease that preclude the lessee from deducting Post-Production Costs incurred to transform leasehold gas into marketable form, but permit the lessee to deduct a pro-rata share of Post-Production Costs incurred after the gas is marketable if they enhance the value of the marketable gas. Such clauses are usually identified, entitled or referred to as "Market Enhancement Clauses" or "MECs."

1.21    "Parties" means Plaintiffs and Chesapeake.

1.22    "Pennsylvania" means the Commonwealth of Pennsylvania.

1.23    "Pennsylvania Leases" means each and every oil and gas lease that (a) covers a leasehold located in Pennsylvania except for the portions of Southwestern Pennsylvania covered by the Gas Gathering Contract Cost of Service - South Marcellus, (b) contains a Market Enhancement Clause or Ready for Sale or Use Clause, and (c) is or has been owned, in whole or in part, by Chesapeake Appalachia, L.L.C. as a lessee, according to the business records maintained by Chesapeake.  Chesapeake represents that upon reasonable investigation, the only Pennsylvania Leases that are in production are located in the Marcellus Region.

1.24    "Plaintiffs" means both (1) the named plaintiffs in *Demchak*, including Demchak Partners Limited Partnership, James P. Burger, Jr., Barbara H. Burger, William A. Burke, II, Clara Burke, William A. Burke, III, Edward J. Burke, Donald G. Fuller, Karen M. Fuller, Randy K. Hemerly, Lamar R. King, Linda J. Schlick, and Janet C. Young; and (2) the plaintiffs-intervenors in *Demchak*, including Russell E. Burkett and Gayle Burkett.

1.25    "Plan of Allocation" means the allocation of the Settlement Funds among the Settlement Class Members based on the Plan of Allocation attached as Exhibit B.  To the extent a Settlement Class Member opts out of this Agreement, Settlement Funds shall be reduced on a pro rata basis.

1.26    "Post-Production Costs" means costs for gathering, compressing, treating, dehydrating, processing, transporting, or transmitting Gas.

1.27    "Preliminary Approval Order" means the order entered by the Court pursuant to paragraph 3 below and in the form set forth in Exhibit C preliminarily approving the Settlement, approving the form and manner of the Settlement Notice, and setting a date certain for the settlement fairness hearing.

1.28    "Ready for Sale or Use Clause" means Royalty payment clauses or provisions in an oil and gas lease that preclude the lessee from deducting Post-Production Costs to make such gas ready for sale or use but permit the lessee to deduct a pro-rata share of Post-

Production Costs incurred after the gas is ready for sale or use. Such clauses are often entitled or referred to as "Ready for Sale or Use Clauses" or RFSU.

1.29    "Request for Exclusion" means a timely and properly submitted written request to be excluded from the Settlement Class. A request for exclusion is not timely and properly submitted unless it is in writing, is signed by the person or entity requesting exclusion, is mailed in a postage-paid envelope to the Settlement Administrator, postmarked no later than the due date established by the Court in the Preliminary Approval Order, and otherwise complies with the instructions contained in the Settlement Notice. The request for exclusion must be personally signed by any natural person requesting exclusion; it cannot be signed by that person's lawyer or other agent, unless the person is incapacitated. Requests for exclusion may not be made on a class or representative basis. If the entity requesting exclusion is a corporation, partnership, or other legal entity, the request must be personally signed by a duly-authorized officer, partner, or managing agent. A request for exclusion is also not properly submitted or valid if it requests a qualified or partial exclusion or any other qualification.

1.30    "Royalty" means lessor royalty interests, and does not include overriding royalty interests.

1.31    "Settled Claims" means any and all claims and causes of action related to Chesapeake's interest in the Pennsylvania Leases of Settlement Class Members, including, but not limited to: (a) any and all claims related to the calculation, amount, payment, and/or reporting of Royalty or Bonus payments made by Chesapeake, either on its own working interest share or on behalf of other working interests, on Gas produced pursuant to a Pennsylvania Lease; (b) any and all claims and causes of action that were alleged or could have been alleged in *Demchak* or in *Burkett* related to the calculation, amount, payment, and/or reporting of such Royalty or Bonus payments; (c) claims for breach of contract, fraud, conspiracy, breach of implied duties and covenants, unjust enrichment, accounting, declaratory or injunctive relief, unfair or deceptive trade practices under federal or state law; (d) challenges to the manner in which sales are made to an affiliated entity, if any; (e) claims that formation, sale, or disposition of assets or equity interests by Chesapeake impacted Royalty payments; and (f) any other challenges to Chesapeake's pricing, sales, or Royalty payment practices. The Settled Claims do not include claims for royalties in suspense, claims for the failure to pay royalties due at all, claims based on errors in determining ownership interests, claims for mathematical or calculation errors in determining volumes, prices, values, or decimal interests. The Settled Claims also do not include claims and causes of action for the breach of this Agreement, including, but not limited to, claims that Chesapeake has not properly calculated Gas Royalties pursuant to paragraph 6 of this Agreement, nor any other future claims and causes of action related to Chesapeake's interests in and obligations under the Pennsylvania Leases. The Settled Claims also do not include any claims or causes of action that Plaintiffs and the Settlement Class Members have or may have against persons and entities other than Chesapeake, except that the Settled Claims do include any claims or causes of action that Plaintiffs and the Settlement Class Members have or may have against Williams Partners, L.P. and/or any of its predecessors or successors in interest, including Access Midstream Partners, L.P.

1.32    "Settlement" means the settlement embodied in this Settlement Agreement and the Final Judgment.

1.33 "Settlement Administrative Costs" means expenses incurred in carrying out the terms of the Settlement Agreement, including fees and expenses of any notice experts or claims administrators who may present affidavits or testimony at the preliminary approval hearing and/or final fairness hearing; and fees and expenses of the Settlement Administrator in administering and carrying out the terms of the Settlement Agreement, including expenses for printing and mailing of the Settlement Notice, post office box rental costs, responding to inquiries by persons receiving or reading the Settlement Notice, and implementing the Plan of Allocation. Settlement Administrative Costs shall not include litigation expenses or Attorneys' Fees or costs associated with calculating or distributing funds for litigation expenses or Attorneys' Fees.

1.34 "Settlement Administrator" means Epiq Corporate Restructuring LLC, in its capacity as administrator of the Settlement in accordance with the provisions of this Agreement.

1.35 "Settlement Agreement" or "Agreement" means this Settlement Agreement, including all exhibits hereto.

1.36 "Settlement Class" means all individuals and entities, including their predecessors and successors-in-interest, who, according to the business records maintained by Chesapeake, are or have been lessor parties to one or more Pennsylvania Leases, to the extent of their interests in such Pennsylvania Leases. The Settlement Class excludes (a) Chesapeake; (b) any person or entity who owns a working interest in or operates a gas well in Pennsylvania; (c) any person or entity who receives royalty in kind pursuant to a Pennsylvania Lease; (d) any person or entity who has previously released Chesapeake from liability concerning or encompassing any or all Settled Claims; (e) the federal government; (f) legally-recognized Indian Tribes; and (g) any person who serves as a judge in this civil action and his/her spouse. Any person or entity who falls within the Settlement Class definition but who is party to a Pennsylvania Lease that has not started producing Gas as of the Settlement Effective Date shall not be entitled to a share of the Settlement Funds as to such Lease, but shall be entitled to make an election under paragraph 6 of this Settlement Agreement as to such Lease.

1.37 "Settlement Class Member" means every member of the Settlement Class who does not submit a valid Request for Exclusion.

1.38 "Settlement Effective Date" shall be the date when each and all of the following conditions have occurred:

1.38.1 The Settlement Agreement has been fully executed by all the Parties and their counsel;

1.38.2 The Preliminary Approval Order has been entered by the Court certifying a Settlement Class, granting preliminary approval of this Settlement Agreement, and approving the Settlement Notice;

1.38.3 The Court-approved Settlement Notice has been mailed as ordered by the Court;

    1.38.4 The Court has approved and entered the Final Judgment, thereby approving this Settlement Agreement and dismissing the Settled Claims with prejudice; and

    1.38.5 The Final Judgment becomes Final as defined in paragraph 1.12, above.

    1.39 "Settlement Funds" means $5,000,000.00 in available funds to the Settlement Class pursuant to the Plan of Allocation.

    1.40 "Settlement Notice" means the notice substantially in the form set forth in Exhibit D, or such other comparable notice(s) approved by the Court, which is to be given to the Settlement Class as provided in paragraph 4 below. The Settlement Notice as determined to be appropriate and approved by the Court and meeting the criteria in paragraph 4, below, shall be regarded as and is the best notice practicable under the circumstances.

    2. <u>Best Efforts to Garner Settlement's Approval</u>. The Parties and Class Counsel agree to recommend that the Court approve the Settlement Agreement and further agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other reasonable steps and efforts that may be necessary or appropriate to implement the terms of this Settlement Agreement and to garner Final Approval. The Parties agree that they will not take any steps to suggest or recommend that members of the Settlement Class should opt out of or elect to be excluded from this Settlement Agreement.

    3. <u>Motion for Preliminary Approval</u>. Chesapeake, the Debtors in the Chapter 11 Plan, shall submit to the Court a motion for preliminary approval of the Settlement Agreement, which shall include a request for entry of the Preliminary Approval Order in the form set forth in Exhibit C. It is expressly understood that by entering into this Settlement Agreement, Chesapeake does so for settlement purposes only. Chesapeake expressly reserves the right to oppose certification of a litigation class or filing of a class proof of claim in the event the Court denies the Motion for Preliminary Approval. The motion for preliminary approval also shall include the proposed Settlement Notice in the form set forth in Exhibit D.

    4. <u>Class Notice</u>. Within fifteen (15) days after the Court's entry of the Preliminary Approval Order or a date otherwise established by the Court, the Settlement Administrator shall provide the Settlement Notice to the Settlement Class in the manner approved by the Court, which Settlement Notice shall include mailing the Settlement Notice by first-class mail, postage pre-paid, to individuals and entities who are in the Settlement Class and for whom Chesapeake has addresses available from its business records. The Parties reserve the right to extend and otherwise amend this timeframe as set forth in this Settlement Agreement. To the extent that any Settlement Notices are returned because an individual or entity who is in the Settlement Class does not reside at the address provided, the Settlement Administrator shall take reasonable steps to obtain a valid address and re-mail the Settlement Notice. Chesapeake shall send a timely and proper notice(s) or update(s) of this Settlement to all appropriate federal and state officials consistent with the Class Action Fairness Act of 2005 ("CAFA"), including under 28 U.S.C. §1715, if necessary.

5.      Settlement Funds and Settlement Administrative Costs.

5.1      Settlement Funds.  The Settlement Funds shall be distributed pursuant to the Final Approval Order.

5.2      Provision of Information.  Chesapeake shall provide such records and information, including electronic data, in its possession, custody, or control, as may be reasonably necessary for the Settlement Administrator to prepare a list of the members of the Settlement Class, mail the Settlement Notice to the members of the Settlement Class, and otherwise properly administer the Settlement.

5.3.      Settlement Administrative Costs.  In addition to the Settlement Funds, Chesapeake shall be obligated to pay all Settlement Administrative Costs.  This provision shall survive any termination of this Settlement Agreement and is binding and effective even in the absence of a Settlement Effective Date.

5.4      No Further Payment Obligations.  Upon the Court's approval of the Settlement Agreement and the distribution of funds pursuant to the Chapter 11 Plan, Chesapeake shall have no further settlement payment obligations to the Settlement Class Members, Class Counsel, or any other person whatsoever under this Settlement Agreement.

5.5      No Obligations for Fees.  Chesapeake shall have no obligation whatsoever to pay any Attorneys' Fees of Plaintiffs, Class Counsel, or Settlement Class Members, or any Incentive Award Payments to Plaintiffs.  Plaintiffs shall look exclusively to the Settlement Funds to recover any Attorneys' Fees or Incentive Award Payments or, subject to the Court's approval, from the economic benefits realized by the Future Royalty Calculations described in paragraph 6.

6.      Future Royalty Calculations.  In exchange for the consideration set forth in this Agreement, including but not limited to the Release, the Settlement Class Members shall be provided the opportunity to make an election concerning how Chesapeake (and its affiliates, successors, and assigns) will calculate and pay Gas Royalties to the Settlement Class Members and their successors and assigns after the Settlement Effective Date occurs, pursuant to the Settlement Class Members' Pennsylvania Leases in which Chesapeake currently owns an interest.  This paragraph applies to Pennsylvania Leases in which Chesapeake currently owns an interest and applies to Chesapeake (and its affiliates, successors, and assigns) as well as the Settlement Class Members and their successors and assigns.  The prices set forth in paragraphs 6.1 and 6.2 of this Agreement do not apply to Pennsylvania Leases in which Chesapeake does not own any interest as of the date of this Agreement.  Therefore, the Parties agree that the Final Judgment shall specify that the following provisions apply to the Settlement Class Members' Pennsylvania Leases in which Chesapeake owns an interest as of the date of this Agreement.

6.1      In-Basin Index Price Without Post-Production Deductions.  The In-Basin Index Price Without Post-Production Deductions refers to the calculation of Gas Royalties based on the In-Basin Price without deduction of any Post-Production Costs and without deduction of any other items, costs, or fees. When calculating and remitting royalty payments to Pennsylvania Lessors under this scenario, Chesapeake may, if it is permitted by Pennsylvania law to do so,

deduct any applicable and properly-calculated state severance taxes from the royalty payments and remit such deducted taxes to the appropriate governmental authority.

        6.2    <u>Netback Price.</u>  The Netback Price refers to the calculation of Gas Royalties based on the weighted average sales price a Chesapeake entity received for its production month sales to third parties minus a proportionate share (net revenue interest share) of the Post-Production Costs that Chesapeake incurred and any applicable and properly-calculated state severance taxes.  It is agreed, however, that Gas Royalties calculated under this scenario for any given month and any given well shall never be in an amount that is less than zero.  For clarity, the Netback Price as described in this paragraph is how Gas Royalties have been calculated and paid by Chesapeake in Pennsylvania pursuant to MEC Leases prior to the date of this Agreement.

        6.3    <u>Notice and Election of Options.</u>  No later than sixty days after the Settlement Effective Date of this Agreement, the Settlement Administrator shall provide written notice ("Election Notice") to each of the Settlement Class Members advising them of their right to elect either (1) the higher of the In-Basin Index Price Without Post-Production Deductions and the Netback Price; (2) the In-Basin Index Price Without Post-Production Deductions; or (3) the Netback Price, each as defined in paragraphs 6.1 and 6.2.  The Election Notice shall provide the Settlement Class Members with an election period ("Election Period") of at least ninety (90) days from the date of the Election Notice within which to send their written election ("Election"), if any, to the Settlement Administrator.  To the extent no Election by a Settlement Class Member is received by the Settlement Administrator within five (5) business days after the expiration of the Election Period, such Settlement Class Member will be deemed to have elected Option (1) (*i.e.*, the higher of the In-Basin Index Price Without Post-Production Deductions and the Netback Price). The Settlement Administrator shall, as soon as possible, and no later than ten (10) business days after the expiration of the Election Period, provide Chesapeake with a copy of all Elections received by the Settlement Administrator and a spreadsheet (in Microsoft Excel or such other format as may be specified by Chesapeake's Counsel) listing each Settlement Class Member and identifying the election made by the Settlement Class Member.  The Elections made pursuant to this Agreement shall be final, and are not subject to change by the Settlement Class Member after the expiration of the Election Period.

        6.4    The Elections chosen by the Settlement Class Members will be effective and utilized by Chesapeake in calculating Gas Royalties beginning with royalties no later than the first production month immediately following the month in which the Election Period expired.

        6.5    The Election chosen by each Settlement Class Member will be deemed to be an amendment of their Pennsylvania Lease, shall run with the land, and shall be binding on the Settlement Class Member and Chesapeake and their respective successors and assigns. Chesapeake will file the Final Judgment incorporating the terms of this Agreement with the Clerk and Recorder of each county covered by the Pennsylvania Leases that are subject to paragraph 6, and the future royalty calculation provisions of paragraph 6 of this Agreement shall burden the Settlement Class Members' interests and Chesapeake's interests in the Pennsylvania Leases. In the event of a contemplated transfer or assignment of its interests under any Pennsylvania Lease that is subject to paragraph 6, Chesapeake shall provide written notification

to its proposed successor or assign of the applicability of this Agreement and the Election made by the Settlement Class Member(s) covered by the Lease, and shall procure the written agreement of the successor and assign to calculate and pay Gas Royalties in accordance with the Election made by the Settlement Class Member(s).

      6.6    It is acknowledged that some volumes of Gas produced by Chesapeake under the Pennsylvania Leases may be used as fuel, lost, or otherwise unaccounted for by a provider of post-production operations or services ("FLU Volumes").  Regardless of a Settlement Class Member's Election, Chesapeake shall not deduct any FLU volumes when calculating its Gas Royalty payments but shall, instead, pay Gas Royalties on one hundred percent (100%) of the FLU Volumes, except as otherwise permitted by a Settlement Class Member's Pennsylvania Lease.

      6.7    If post-production operations or services are provided by a third party, then the Post-Production Costs subject to deduction under the Netback Price shall be the Post-Production Costs actually charged by the third party to Chesapeake and/or its affiliate and paid by Chesapeake and/or its affiliate to the third party on an arm's length basis. If post-production operations or services are provided by Chesapeake and/or its affiliates, then the Post-Production Costs for such operations or services subject to deduction under the Netback Price shall include only Chesapeake's and/or its affiliate's actual and reasonable cost for such operations or services. In addition, in taking deductions pursuant to the Netback Price, Chesapeake shall not deduct or reflect as deductions, directly or indirectly, except as expressly allowed by a lease: (a) any marketing fees, (b) any costs for production facilities, or (c) any costs for field separators, flow lines, or the facilities or operations located between the wellhead and the point at which Gas enters a gathering system; nor shall any such deductions be taken pursuant to the Netback Price.

      6.8    The Final Judgment shall modify only how Chesapeake (and its affiliates, successors and assigns) calculates and pays Royalties on Chesapeake's share of Gas production and how Chesapeake (and its affiliates, successors and assigns) pays Gas Royalties on behalf of any other person or entity holding a lessee/working interest under a Pennsylvania Lease.  The Final Judgment shall not modify how any other entity calculates and/or pays Royalties pursuant to the Pennsylvania Leases.

      6.9    Except as specified herein and in the Final Judgment, paragraph 6 of this Settlement Agreement shall not affect any other provisions of a Pennsylvania Lease.  The Parties expressly agree that paragraph 6 of this Settlement Agreement applies notwithstanding any current or future law, statute, judicial decision, or rule regulating the payment of Royalties in Pennsylvania.

      7.    <u>Walk-Away Rights.</u> In the event that there are Excluded Members who, when combined, would be allocated twenty percent (20%) or more of the Settlement Fund, Chesapeake shall have the right, in its sole and absolute discretion, within twenty (20) calendar days after the opt-out deadline set by the Court, to notify Class Counsel in writing that Chesapeake has elected to dissolve this Settlement Agreement and withdraw from the Settlement.  In the event Chesapeake provides such notification and thereby exercises its walk-away rights hereunder, the Parties shall have no further obligations under this Settlement Agreement whatsoever.

8.     Order, Final Judgment, and Dismissal.  If the Court provides final approval of this Settlement Agreement, then the Parties jointly and promptly shall seek entry of the Final Judgment in the form set forth in Exhibit A.  The Parties intend that the language in the Final Judgment shall conform to the language in this Settlement Agreement, and the Parties will modify Exhibit A if necessary to ensure such conformity.

9.     *Burkett* Arbitration.

9.1.     Defendant and the *Burkett* Plaintiffs-Intervenors agree to vacatur of the January 28, 2014 and September 11, 2014 orders issued by the arbitration Panel in the *Burkett* Arbitration.  Within five days of the Settlement Effective Date (or if the fifth day falls on a weekend or a federal holiday, then on the next business day thereafter), Defendant and the *Burkett* Plaintiffs-Intervenors shall jointly submit a mutually-agreed upon form of vacatur to the arbitration Panel.  Consistent with paragraph 9.4, the *Burkett* Plaintiff-Intervenors and Defendant agree to reinstate the orders if the Settlement Agreement does not become Final.

9.2.     The *Burkett* Plaintiffs-Intervenors further agree that within five days of the Settlement Effective Date (or if the fifth day falls on a weekend or a federal holiday, then on the next business day thereafter), the *Burkett* Plaintiffs-Intervenors shall voluntarily dismiss the *Burkett* Arbitration, with prejudice.  In the interim, to the extent the arbitration Panel orders briefing or other action in the *Burkett* Arbitration, Defendant and the *Burkett* Plaintiffs-Intervenors agree to stay and shall make their best efforts to stay the *Burkett* Arbitration pending this Settlement Agreement becoming Final.

9.3.     Defendant further agrees that within five days of the Settlement Effective Date (or if the fifth day falls on a weekend or a federal holiday, then on the next business day thereafter), Defendant shall voluntarily dismiss the *Burkett* Arbitration and any appeals related thereto.  In the interim, to the extent a court orders briefing or other action in the *Burkett* Arbitration, and any appeals related thereto, Defendant and the *Burkett* Plaintiffs-Intervenors shall make their best efforts to stay the *Burkett* Arbitration pending this Settlement Agreement becoming Final.

9.4.     In the event this Settlement Agreement does not become Final, nothing in paragraph 9 or its sub-sections shall preclude either Defendant or the *Burkett* Plaintiffs-Intervenors from seeking to re-initiate the *Burkett* Arbitration or the *Burkett* Arbitration, or any appeals related thereto, following termination of the automatic stay in the Chapter 11 Cases.

10.     Conditions Precedent to Agreement's Effect.  This Settlement Agreement shall become final, binding and effective upon the Settlement Effective Date, and not before then.

11.     Modifications.  Any modification to this Settlement Agreement or its exhibits, whether modified by the Parties or any court, must be approved in writing signed by the Parties or their authorized representatives to be binding.

12.     Release.

12.1.1. As of the Settlement Effective Date and at all times thereafter, each Plaintiff and Settlement Class Member hereby releases the Settled Claims and any and all claims

that Chesapeake is obligated to pay them royalties under their Pennsylvania Leases in any manner other than the Election under paragraph 6 of this Agreement (including, but not limited to, the Settled Claims). Plaintiffs and the Settlement Class Members hereby further agree that they fully and forever release and discharge all working interest owners on whose behalf Chesapeake has paid or will pay Royalties pursuant to Pennsylvania Leases from any and all of the Settled Claims, but do so only to the limited extent of Chesapeake's payments of Gas Royalties on behalf of such working interest owners. Further, each of the Plaintiffs and the Settlement Class Members agree that any claims (as defined by section 101(5) of the Bankruptcy Code) against Chesapeake held by such Plaintiffs or Settlement Class Members shall be deemed satisfied and released and any Settled Claims filed in the Bankruptcy Cases shall be discharged and expunged from the claims registrar without any further order of the Bankruptcy Court. To the extent any of the Plaintiffs or Settlement Class Members vote on the Chapter 11 Plan, they shall vote in favor of the Plan and not opt out of the third party releases contained in the Chapter 11 Plan.

       12.1.2   The Parties acknowledge and agree that the relief afforded under this Settlement Agreement fully and completely compromises the Settlement Class Members' claims for relief in *Demchak* and *Burkett*.

       12.1.3  This Release also covers, without limitation, any and all claims for Attorneys' Fees, Incentive Award Payments, catalyst fees, costs, or disbursements incurred by Class Counsel or any other counsel representing Plaintiffs or Settlement Class Members or by Plaintiffs or the Settlement Class Members, or any of them, in connection with or related in any manner to *Demchak* and *Burkett*, the settlement of *Demchak* and *Burkett*, the administration of this Settlement, the implementation of this Settlement, and/or the Settled Claims except to the extent otherwise specified in the Settlement Agreement.

       12.2   <u>No Release of Non-Parties</u>. Nothing herein shall operate or be construed to release any claims the Parties and Settlement Class Members may have against any person or entity who is not a Party hereto except as provided for in sub-paragraph 12.1.1, above. Moreover, to the extent a Pennsylvania Lease provides an audit or accounting right, this Agreement does not preclude the exercise of such audit or accounting right regarding Royalty payments made after the Settlement Effective Date pursuant to the lessor's election for future royalty calculations under paragraph 6 of this Settlement Agreement.

       13.    <u>Authority and Capacity to Execute</u>. Each person signing this Settlement Agreement on behalf of a Party represents that such signatory has the full and complete power, authority and capacity to execute and deliver this Settlement Agreement and any documents to be executed pursuant hereto, that all formalities necessary to authorize execution of this Settlement Agreement so as to bind the principal, limited liability company, trust, partnership or corporation have been undertaken, and that upon the occurrence of the Settlement Effective Date, this Settlement Agreement will constitute the valid and legally binding obligation of each such Party hereto, enforceable by and against that Party in accordance with its terms.

       14.    <u>Successors and Assigns</u>. This Settlement Agreement is binding upon and will inure to the benefit of each of the Parties hereto and their respective agents, officers, directors,

shareholders, employees, consultants, heirs, devisees, legal representatives, attorneys, successors and assigns.

15.     <u>Construction</u>.  The language of all parts of this Settlement Agreement and its exhibits will in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any Party.  All Parties have participated in the preparation of this Settlement Agreement and its exhibits and no presumptions or rules of interpretation based upon the identity of the Party preparing or drafting this Settlement Agreement or its exhibits, or any part thereof, shall be applied or invoked.

16.     <u>Disputed Claims</u>.  It is understood that this Settlement Agreement constitutes a compromise of highly disputed claims, and that neither (a) the consideration provided for herein, (b) the entry into the Settlement Agreement or stipulation to the Final Judgment, nor (c) any recital contained herein, will be construed, interpreted, or admissible as an admission of liability by or on behalf of any Party hereto, all such liability being expressly denied, regardless of whether this Settlement Agreement becomes Final.  In the event that the Settlement Agreement does not become Final, then this Settlement Agreement shall be of no force or effect, and the Settlement Agreement and any and all negotiations, documents, and discussions associated with it shall be without prejudice to the rights of any Party, shall not be deemed or construed to be an admission or evidence of any liability or wrongdoing by Chesapeake or of the truth of any of the claims or allegations contained in the complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in *Demchak*, *Burkett*, or in any other action or proceeding.  The Parties expressly reserve all of their respective rights, claims and defenses if this Settlement Agreement does not become Final.

The Parties agree that the Settlement Class will be certified for settlement purposes only, that this Settlement shall not be construed to represent either an assertion or concession that such a class would be manageable or appropriately certified for litigation, arbitration, trial, or a class proof of claim in the Chapter 11 Cases, and in the event this Settlement Agreement is not given final approval or this Settlement is not finalized for any reason whatsoever, the Parties acknowledge and agree that Chesapeake remains free to challenge whether this proposed class or any other proposed classes are properly certifiable in this litigation, in the Chapter 11 Cases, or anywhere else, and Plaintiff shall not argue that anything in this Settlement Agreement limits Chesapeake's right to do so.

The Parties further agree that by entering into this Settlement Agreement and seeking Preliminary Approval and/or Final Approval, no Party waives or in any way diminishes its right to demand that any disputes arising from the Pennsylvania Leases be decided in individual, binding arbitration pursuant to the arbitration clause, if any, in any given lease or by litigation. Moreover, neither the fact of this Settlement Agreement nor the fact that the Parties are seeking court approval of this Settlement should be construed that the Parties or the Pennsylvania Leases have agreed to or contemplated that disputes as to royalty payments may be resolved on a class-wide basis in arbitration or otherwise.

17.     <u>Survival of Covenants and Representations</u>.  All covenants and representations contained in this Settlement Agreement are contractual in nature, are not mere recitals, and will survive the execution of this Settlement Agreement.

- 15 -

18.    <u>Miscellaneous</u>.

18.1    <u>Governing Law</u>.  This Settlement Agreement is and will be governed by the laws of the Commonwealth of Pennsylvania.

18.2    <u>Severability</u>.  In the event that a court of competent jurisdiction enters a final judgment or decision holding invalid any nonmaterial provision of this Settlement Agreement, the remainder of this Settlement Agreement will be fully enforceable.  If a court of competent jurisdiction holds invalid or materially modifies any material provision of this Settlement Agreement, including but not limited to the provisions set forth in paragraph 6, either Party shall be entitled to dissolve this Settlement Agreement and withdraw from the Settlement.

18.3    <u>Counterparts</u>.  This Settlement Agreement may be executed by facsimile or electronic signatures and in counterparts, all of which will have full force and effect between the Parties, subject to all conditions precedent and subsequent set forth herein.

18.4    <u>Integration</u>.  This Settlement Agreement and its exhibits constitute the entire agreement of the Parties and a complete merger of all prior negotiations and agreements.

18.5    <u>Headings</u>.  The headings of the paragraphs and subparagraphs herein are intended solely for convenience or reference and will not control or influence the meaning or interpretation of any of the provisions of this Settlement Agreement.

18.6    <u>Gender and Number</u>.  Whenever applicable, the pronouns designating the feminine, masculine and neuter will equally apply to the feminine, masculine and neuter genders; the singular will include the plural and the plural will include the singular.

18.7    <u>Fees and Costs</u>.  Chesapeake shall bear its own costs, expenses, and attorneys' fees incurred in connection with *Demchak*, *Burkett*, this Settlement, and performance of the obligations imposed hereunder.  Chesapeake shall have no obligation to pay the Attorneys' Fees or Incentive Award Payments of Plaintiffs, any Settlement Class Member, Class Counsel, or any other counsel or representative.

18.7.1  Class Counsel may request Court approval for the payment from the Settlement Funds of Incentive Award Payments to Plaintiffs.

18.7.2  Class Counsel will request reimbursement of Litigation Expenses to be paid from the Settlement Funds. Class Counsel will also request an award of Attorneys' Fees to be paid from the Settlement Funds and/or from future economic benefits realized under the Future Royalty Calculation Method. Chesapeake will take no position on the amount of any requests for reimbursement of Litigation Expenses or Attorneys' Fees to Class Counsel or Incentive Award Payments to Plaintiffs.

18.8     <u>Extensions of Time</u>.  The Parties reserve the right, subject to the Court's approval, to mutually agree to any reasonable extension of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

18.9     <u>Notice</u>.  All notices called for by this Settlement Agreement shall be sent to Class Counsel on behalf of Plaintiffs and all Settlement Class Members; and to Chesapeake's Counsel on behalf of Chesapeake.  Such notice shall become effective when placed in the United States mail, prepaid first-class postage affixed, addressed to the addresses listed in paragraph 1 above.  It is the responsibility of each Party to notify all other Parties of any change in any of these addresses.  The Party giving notice shall make reasonable efforts also to provide copies of any notices by electronic mail or telephonic facsimile at the same time notice is placed in the mail.

18.9.1     Class Counsel, or any person acting on behalf of Class Counsel, shall not publish any form of written notice except as provided for herein without prior written approval of the content of such notice by Chesapeake, other than any information provided to any Court in furtherance of this Settlement Agreement.

18.9.2     It shall be the responsibility of Class Counsel, or its designees, to respond to all inquiries from members of the Settlement Class.

18.9.3     Plaintiffs agree that they shall not elect or seek to opt out of or exclude themselves from the Settlement Class.

18.9.4     Plaintiffs, Class Counsel, and Chesapeake hereby agree not to initiate, nor respond to, any communications with the media or press, on the Internet, or in any public forum, orally or in writing, that relate to this Settlement, *Demchak*, or *Burkett* that could be viewed to cast Plaintiffs, Class Counsel, or Chesapeake in an unfavorable light or otherwise be inconsistent with the Settlement Notice, the Settlement Agreement, and Court papers filed by the Parties in connection with the Settlement Agreement.

AGREED TO AND DATED AS OF THE *3rd* DAY OF MARCH, 2021.

**APPROVED BY CLASS COUNSEL AND COUNSEL FOR THE *DEMCHAK* PLAINTIFFS:**

*DEMCHAK* **PLAINTIFFS, FOR THEMSELVES AND ON BEHALF OF THE SETTLEMENT CLASS:**

Larry D. Moffett
Law Office of Larry D. Moffett, PLLC
P.O. Box 1418
Oxford, MS 38655

**FOR DEMCHAK PARTNERS LIMITED PARTNERSHIP**

Charles E. Schaffer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Ste 500
Philadelphia, PA 19106

**FOR JAMES P. BURGER, JR. & BARBARA H. BURGER**

Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, MD 20814

**FOR WILLIAM A. BURKE, II & CLARA BURKE**

**FOR WILLIAM A. BURKE, III**

John W. ("Don") Barrett
Barrett Law Group
Post Office Drawer 927
Lexington, MS 39095

**FOR EDWARD J. BURKE**

**FOR DONALD G. FULLER & KAREN M. FULLER**

**FOR RANDY K. HEMERLY**

Daniel E. Seltz
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson St., 8th Floor
New York, NY 10013

**FOR LAMAR R. KING**

**FOR LINDA J. SCHLICK**

Michelle R. O'Brien
The O'Brien Law Group LLC
2800 Stafford Ave., Box 3034
Scranton, PA 18505

**FOR JANET C. YOUNG**

AGREED TO AND DATED AS OF THE ____ DAY OF MARCH, 2021.

**APPROVED BY CLASS COUNSEL AND COUNSEL FOR THE *DEMCHAK* PLAINTIFFS:**

**_DEMCHAK_ PLAINTIFFS, FOR THEMSELVES AND ON BEHALF OF THE SETTLEMENT CLASS:**

_____
Larry D. Moffett
Law Office of Larry D. Moffett, PLLC
P.O. Box 1418
Oxford, MS 38655

**FOR DEMCHAK PARTNERS LIMITED PARTNERSHIP**

_____
Charles E. Schaffer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Ste 500
Philadelphia, PA 19106

**FOR JAMES P. BURGER, JR. & BARBARA H. BURGER**

_____
Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, MD 20814

**FOR WILLIAM A. BURKE, II & CLARA BURKE**

**FOR WILLIAM A. BURKE, III**

_____
John W. ("Don") Barrett
Barrett Law Group
Post Office Drawer 927
Lexington, MS 39095

**FOR EDWARD J. BURKE**

**FOR DONALD G. FULLER & KAREN M. FULLER**

_____
Daniel E. Seltz
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson St., 8th Floor
New York, NY 10013

**FOR RANDY K. HEMERLY**

**FOR LAMAR R. KING**

**FOR LINDA J. SCHLICK**

_____
Michelle R. O'Brien
The O'Brien Law Group LLC
2800 Stafford Ave., Box 3034
Scranton, PA 18505

**FOR JANET C. YOUNG**

AGREED TO AND DATED AS OF THE _____ DAY OF MARCH, 2021.

**APPROVED BY CLASS COUNSEL AND COUNSEL FOR THE *DEMCHAK* PLAINTIFFS:**

*DEMCHAK* **PLAINTIFFS, FOR THEMSELVES AND ON BEHALF OF THE SETTLEMENT CLASS:**

_____

Larry D. Moffett
Law Office of Larry D. Moffett, PLLC
P.O. Box 1418
Oxford, MS 38655

_____

Charles E. Schaffer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Ste 500
Philadelphia, PA 19106

_____

Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, MD 20814

_____

John W. ("Don") Barrett
Barrett Law Group
Post Office Drawer 927
Lexington, MS 39095

_____

Daniel E. Seltz
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson St., 8th Floor
New York, NY 10013

_____

Michelle R. O'Brien
The O'Brien Law Group LLC
2800 Stafford Ave., Box 3034
Scranton, PA 18505

_____

**FOR DEMCHAK PARTNERS LIMITED PARTNERSHIP**

_____

**FOR JAMES P. BURGER, JR. & BARBARA H. BURGER**

_____

**FOR WILLIAM A. BURKE, II & CLARA BURKE**

_____

**FOR WILLIAM A. BURKE, III**

_____

**FOR EDWARD J. BURKE**

_____

**FOR DONALD G. FULLER & KAREN M. FULLER**

_____

**FOR RANDY K. HEMERLY**

_____

**FOR LAMAR R. KING**

_____

**FOR LINDA J. SCHLICK**

_____

**FOR JANET C. YOUNG**

AGREED TO AND DATED AS OF THE ____ DAY OF MARCH, 2021.

**APPROVED BY CLASS COUNSEL AND COUNSEL FOR THE *DEMCHAK* PLAINTIFFS:**

*DEMCHAK* **PLAINTIFFS, FOR THEMSELVES AND ON BEHALF OF THE SETTLEMENT CLASS:**

_____
Larry D. Moffett
Law Office of Larry D. Moffett, PLLC
P.O. Box 1418
Oxford, MS 38655

**FOR DEMCHAK PARTNERS LIMITED PARTNERSHIP**

_____
Charles E. Schaffer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Ste 500
Philadelphia, PA 19106

**FOR JAMES P. BURGER, JR. & BARBARA H. BURGER**

_____
Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, MD 20814

**FOR WILLIAM A. BURKE, II & CLARA BURKE**

**FOR WILLIAM A. BURKE, III**

_____
John W. ("Don") Barrett
Barrett Law Group
Post Office Drawer 927
Lexington, MS 39095

**FOR EDWARD J. BURKE**

**FOR DONALD G. FULLER & KAREN M. FULLER**

_____
Daniel E. Seltz
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson St., 8th Floor
New York, NY 10013

**FOR RANDY K. HEMERLY**

**FOR LAMAR R. KING**

**FOR LINDA J. SCHLICK**

_____
Michelle R. O'Brien
The O'Brien Law Group LLC
3738 Birney Avenue
Moosic, PA 18507

**FOR JANET C. YOUNG**

- 18 -

AGREED TO AND DATED AS OF THE ____ DAY OF MARCH, 2021.

**APPROVED BY CLASS COUNSEL**
**AND COUNSEL FOR THE**
***DEMCHAK* PLAINTIFFS:**

***DEMCHAK* PLAINTIFFS, FOR**
**THEMSELVES AND ON BEHALF OF**
**THE SETTLEMENT CLASS:**

_____
Larry D. Moffett
Law Office of Larry D. Moffett, PLLC
P.O. Box 1418
Oxford, MS 38655

**FOR DEMCHAK PARTNERS LIMITED**
**PARTNERSHIP**
_____

_____
Charles E. Schaffer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Ste 500
Philadelphia, PA 19106

**FOR JAMES P. BURGER, JR. & BARBARA**
**H. BURGER**
_____

_____
Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, MD 20814

**FOR WILLIAM A. BURKE, II & CLARA**
**BURKE**
_____

_____

**FOR WILLIAM A. BURKE, III**
_____

_____
John W. ("Don") Barrett
Barrett Law Group
Post Office Drawer 927
Lexington, MS 39095

**FOR EDWARD J. BURKE**
_____

**FOR DONALD G. FULLER & KAREN M.**
**FULLER**
_____

_____
Daniel E. Seltz
Lieff, Cabraser, Heimann & Bernstein,
LLP
250 Hudson St., 8th Floor
New York, NY 10013

**FOR RANDY K. HEMERLY**
_____

**FOR LAMAR R. KING**
_____

**FOR LINDA J. SCHLICK**
_____

_____
Michelle R. O'Brien
The O'Brien Law Group LLC
3738 Birney Avenue
Moosic, PA 18507

**FOR JANET C. YOUNG**
_____

- 18 -

AGREED TO AND DATED AS OF THE _____ DAY OF MARCH, 2021.

| | |
|---|---|
| **APPROVED BY CLASS COUNSEL AND COUNSEL FOR THE *DEMCHAK* PLAINTIFFS:** | ***DEMCHAK* PLAINTIFFS, FOR THEMSELVES AND ON BEHALF OF THE SETTLEMENT CLASS:** |

_____
Larry D. Moffett
Law Office of Larry D. Moffett, PLLC
P.O. Box 1418
Oxford, MS 38655

**FOR DEMCHAK PARTNERS LIMITED PARTNERSHIP**

_____
Charles E. Schaffer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Ste 500
Philadelphia, PA 19106

**FOR JAMES P. BURGER, JR. & BARBARA H. BURGER**

_____
Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, MD 20814

**FOR WILLIAM A. BURKE, II & CLARA BURKE**

_____
**FOR WILLIAM A. BURKE, III**

_____
**FOR EDWARD J. BURKE**

_____
John W. ("Don") Barrett
Barrett Law Group
Post Office Drawer 927
Lexington, MS 39095

**FOR DONALD G. FULLER & KAREN M. FULLER**

_____
**FOR RANDY K. HEMERLY**

_____
Daniel E. Seltz
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson St., 8th Floor
New York, NY 10013

**FOR LAMAR R. KING**

_____
**FOR LINDA J. SCHLICK**

_____
Michelle R. O'Brien
The O'Brien Law Group LLC
3738 Birney Avenue
Moosic, PA 18507

**FOR JANET C. YOUNG**

- 18 -

AGREED TO AND DATED AS OF THE ____ DAY OF MARCH, 2021.

**APPROVED BY CLASS COUNSEL
AND COUNSEL FOR THE
*DEMCHAK* PLAINTIFFS:**

**_DEMCHAK_ PLAINTIFFS, FOR
THEMSELVES AND ON BEHALF OF
THE SETTLEMENT CLASS:**

_____
Larry D. Moffett
Law Office of Larry D. Moffett, PLLC
P.O. Box 1418
Oxford, MS 38655

**FOR DEMCHAK PARTNERS LIMITED
PARTNERSHIP**

_____
Charles E. Schaffer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Ste 500
Philadelphia, PA 19106

**FOR JAMES P. BURGER, JR. & BARBARA
H. BURGER**

_____
Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, MD 20814

**FOR WILLIAM A. BURKE, II & CLARA
BURKE**

**FOR WILLIAM A. BURKE, III**

_____
John W. ("Don") Barrett
Barrett Law Group
Post Office Drawer 927
Lexington, MS 39095

**FOR EDWARD J. BURKE**

**FOR DONALD G. FULLER & KAREN M.
FULLER**

_____
Daniel E. Seltz
Lieff, Cabraser, Heimann & Bernstein,
LLP
250 Hudson St., 8th Floor
New York, NY 10013

**FOR RANDY K. HEMERLY**

**FOR LAMAR R. KING**

*Amanda L. Schlick*
**FOR LINDA J. SCHLICK**

_____
Michelle R. O'Brien
The O'Brien Law Group LLC
3738 Birney Avenue
Moosic, PA 18507

**FOR JANET C. YOUNG**

AGREED TO AND DATED AS OF THE ____ DAY OF MARCH, 2021.

**APPROVED BY CLASS COUNSEL AND COUNSEL FOR THE *DEMCHAK* PLAINTIFFS:**

**_DEMCHAK_ PLAINTIFFS, FOR THEMSELVES AND ON BEHALF OF THE SETTLEMENT CLASS:**

_____
Larry D. Moffett
Law Office of Larry D. Moffett, PLLC
P.O. Box 1418
Oxford, MS 38655

**FOR DEMCHAK PARTNERS LIMITED PARTNERSHIP**

_____
Charles E. Schaffer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Ste 500
Philadelphia, PA 19106

**FOR JAMES P. BURGER, JR. & BARBARA H. BURGER**

_____
Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, MD 20814

**FOR WILLIAM A. BURKE, II & CLARA BURKE**

**FOR WILLIAM A. BURKE, III**

_____
John W. ("Don") Barrett
Barrett Law Group
Post Office Drawer 927
Lexington, MS 39095

**FOR EDWARD J. BURKE**

**FOR DONALD G. FULLER & KAREN M. FULLER**

**FOR RANDY K. HEMERLY**

_____
Daniel E. Seltz
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson St., 8th Floor
New York, NY 10013

**FOR LAMAR R. KING**

**FOR LINDA J. SCHLICK**

_____
Michelle R. O'Brien
The O'Brien Law Group LLC
3738 Birney Avenue
Moosic, PA 18507

*Janet C. Young*
**FOR JANET C. YOUNG**

- 18 -

**APPROVED BY COUNSEL FOR
THE *BURKETT* PLAINTIFFS-
INTERVENORS:**

*BURKETT* **PLAINTIFFS-INTERVENORS,
FOR THEMSELVES:**

Douglas A. Clark
The Clark Law Firm
1563 Main Street
Peckville, PA 18452

**RUSSELL E. BURKETT**

**GAYLE BURKETT**

Francis P. Karam
Francis P. Karam, Esq. P.C.
12 Debrosses Street
New York, NY 10013

Gerard M. Karam
Mazzoni, Karam Petorek & Valvano
321 Spruce Street #201
Scranton, PA 18503

Rachel Schulman
Rachel Schulman, Esq. P.C.
14 Bond Street, Suite 143
Great Neck, NY 11021

**FOR JANET C. YOUNG**

**APPROVED BY COUNSEL FOR THE *BURKETT* PLAINTIFFS-INTERVENORS:**

*BURKETT* **PLAINTIFFS-INTERVENORS, FOR THEMSELVES:**

RUSSELL E. BURKETT

GAYLE BURKETT

Douglas A. Clark
The Clark Law Firm
1563 Main Street
Peckville, PA 18452

Francis P. Karam
Francis P. Karam, Esq. P.C.
12 Debrosses Street
New York, NY 10013

Gerard M. Karam
Mazzoni, Karam Petorek & Valvano
321 Spruce Street #201
Scranton, PA 18503

Rachel Schulman
Rachel Schulman, Esq. P.C.
14 Bond Street, Suite 143
Great Neck, NY 11021

**APPROVED BY COUNSEL FOR THE DEFENDANT:**

**CHESAPEAKE APPALACHIA, L.L.C.**

Daniel T. Donovan
Ragan Naresh
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington DC 20004

James R. Webb
Executive Vice President – General Counsel,
Chesapeake Energy Corp.

Daniel T. Brier
Myers Brier & Kelly, LLP
425 Spruce Street, Ste. 200

AGREED TO AND DATED AS OF THE \_\_\_\_ DAY OF MARCH, 2021

**APPROVED BY CLASS COUNSEL AND COUNSEL FOR THE *DEMCHAK* PLAINTIFFS:**

**_DEMCHAK_ PLAINTIFFS, FOR THEMSELVES AND ON BEHALF OF THE SETTLEMENT CLASS:**

_____

Larry D. Moffett
Law Office of Larry D. Moffett, PLLC
P.O. Box 1418
Oxford, MS 38655

_____

**FOR DEMCHAK PARTNERS LIMITED PARTNERSHIP**

_____

Charles E. Schaffer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Ste 500
Philadelphia, PA 19106

_____

**FOR JAMES P. BURGER, JR. & BARBARA H. BURGER**

_____

**FOR WILLIAM A. BURKE, II & CLARA BURKE**

_____

Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, MD 20814

_____

**FOR WILLIAM A. BURKE, III**

_____

**FOR EDWARD J. BURKE**

_____

**FOR DONALD G. FULLER & KAREN M. FULLER**

_____

John W. ("Don") Barrett
Barrett Law Group
Post Office Drawer 927
Lexington, MS 39095

_____

**FOR RANDY K. HEMERLY**

_____

Daniel E. Seltz
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson St., 8th Floor
New York, NY 10013

_____

**FOR LAMAR R. KING**

_____

**FOR LINDA J. SCHLICK**

_____

Michelle R. O'Brien
The O'Brien Law Group LLC
2800 Stafford Ave., Box 3034
Scranton, PA 18505

_____

**FOR JANET C. YOUNG**

APPROVED BY COUNSEL FOR
THE DEFENDANT:

CHESAPEAKE APPALACHIA, L.L.C.

Daniel T. Donovan
Ragan Naresh
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington DC 20004

Daniel T. Brier
Myers Brier & Kelly, LLP
425 Spruce Street, Ste. 200
Scranton, PA 18503

James R. Webb
Executive Vice President – General Counsel,
Chesapeake Energy Corp.

- 20 -

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BANKRUPTCY COURT

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 20-33233 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## [PROPOSED] ORDER (I) DIRECTING THE APPLICATION OF RULES 9014, 9019, AND 7023, (II) CERTIFYING THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY, (III) FINALLY APPROVING THE SETTLEMENT AGREEMENT, AND (IV) GRANTING RELATED RELIEF

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

Upon the motion (the "Motion") of Chesapeake Energy Corporation ("Chesapeake") and Plaintiffs for entry of an order (this "Order"): (i) directing the application of Rules 9014, 9019, and 7023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, by incorporation, Rule 23 of the Federal Rules of Civil Procedure (the "Federal Rules"), (ii) certifying the Settlement Class, as defined in the Settlement Agreement, for settlement purposes only, and (iii) finally approving the Settlement Agreement attached as Exhibit 3 to the Motion, and (iv) granting related relief as more fully set forth in the Motion and the Settlement Agreement, and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a preliminary order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having found that the Notice of Settlement and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having found that each putative member of the Settlement Class was afforded a reasonable opportunity to opt out of or object to the Settlement; and this Court having found Debtors to have complied with 28 U.S.C. § 1715; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Settlement Fairness Hearing"); and this Court having considered each of the factors listed in

Civil Rule 23; and this Court having determined that the legal and factual bases set forth in the Motion and at the Settlement Fairness Hearing establish just cause for the relief granted herein; and this Court having entered an order preliminarily approving the Settlement Agreement, among other things Docket No. [] (the "Preliminary Approval Order"); and this Court having found that the Settlement Administrator complied with the Preliminary Approval Order; and this Court having found that the Settlement is fair, reasonable, and adequate; and this Court having found that the Plan of Allocation and Distribution is fair and reasonable to the Settlement Class; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    Pursuant to, and in accordance with, Bankruptcy Rules 7023, 9014, and 9019, and Civil Rule 23, the Settlement Agreement is hereby approved on a final basis.

2.    The Settlement Class shall include:

> [A]ll individuals and entities, including their predecessors and successors-in-interest, who, according to the business records maintained by Chesapeake, are or have been lessor parties to one or more Pennsylvania Leases, to the extent of their interests in such Pennsylvania Leases.   The Settlement Class excludes (a) Chesapeake; (b) any person or entity who owns a working interest in or operates a gas well in Pennsylvania; (c) any person or entity who receives royalty in kind pursuant to a Pennsylvania Lease; (d) any person or entity who has previously released Chesapeake from liability concerning or encompassing any or all Settled Claims; (e) the federal government; (f) legally-recognized Indian Tribes; and (g) any person who serves as a judge in this civil action and his/her spouse.

3.    Pennsylvania Leases means each and every oil and gas lease that (a) covers a leasehold located in Pennsylvania except for the portions of Southwestern Pennsylvania covered by the Gas Gathering Contract Cost of Service - South Marcellus, (b) contains a Market Enhancement Clause or Ready for Sale or Use Clause, and (c) is or has been owned, in whole or in part, by

Chesapeake Appalachia, L.L.C. as a lessee, according to the business records maintained by Chesapeake.

4.   The Settlement Class is certified for settlement purposes only pursuant to Bankruptcy Rules 7023, 9014, 9019, and Civil Rule 23.

5.   Upon Defendant's transfer of the Settlement Funds the Defendant shall have no further liability for payment of any additional amount under the Settlement Agreement.

6.   The putative members of the Settlement Class listed on Exhibit [] to this Judgment elected to opt-out of the Settlement Class and are not entitled to receive any Settlement Funds.

7.   All Settlement Class Members who did not exercise the right to opt-out of the Settlement Class are bound by this Judgment and the terms of the Settlement Agreement.

8.   Each Settlement Class Member and the heirs, devisees, successors, assigns, agents and/or representatives of each Settlement Class Member, and each Defendant and Affiliate of each Defendant and their successors shall be barred from asserting any and all Released Claims against the Released Parties.

9.   Each Settlement Class Member and the heirs, devisees, successors, assigns, agents and/or representatives of each Settlement Class Member, and each Defendant and Affiliate of each Defendant and their successors shall be conclusively deemed to have released any and all Released Claims against the Released Parties.

10. Distribution of the Settlement Funds and election of future royalty payment methodologies shall be made in accordance with the Settlement Agreement.

11. No Settlement Class Member filed an objection to the Settlement. Hence, no Settlement Class Member has standing to appeal entry of this Judgment. Nonetheless, any Settlement Class

Member that wishes to appeal this Judgment or the Fees and Expenses Order must file a notice of appeal within (14) days of entry of this Judgment pursuant to Bankruptcy Rule 8002.

12. Neither the Preliminary Approval Order, this Judgment, the Settlement Agreement, the negotiations leading to the Settlement Agreement, nor the carrying out of the Settlement Agreement may ever be used by any person or entity as proof of the viability of any claim, cause of action, or in any other proceeding.

13. This Court retains jurisdiction to construe, interpret, enforce, and implement the Settlement Agreement and this Judgment.


SO ORDERED this _____ day of _____, 2021.


_____
HON. DAVID R. JONES

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BANKRUPTCY COURT**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 20-33233 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## PLAN OF ALLOCATION AND DISTRIBUTION

1.    Plan of Allocation

(a)    The aggregate amount of funds available for distribution to the Settlement Class Members ("Distribution Funds") will be determined by subtracting from the Settlement Funds any award of Attorneys' Fees, Litigation Expenses, and/or Incentive Payments that the Court may grant to Plaintiffs, Class Members, or Class Counsel.

(b)    Each Settlement Class Member's allocated share of the Distribution Funds will be calculated in a two-step process. First, each class member's percentage share of the total amount of Royalty deductions for Post-Production Costs that Chesapeake has taken from the Settlement Class under Pennsylvania Leases up to December 31, 2020. Second, the Class Member's percentage share of the total Royalty deductions will be used as the Class Member's percentage of the Distribution Funds.

(c)    Calculation of each Settlement Class Member's allocated share of the Distribution Funds shall be based upon Chesapeake's accounting records that identify the lessors to whom royalties were paid up to the December 31, 2020. Claims between or among Settlement Class Members as to their respective entitlements to Distribution Funds under a given Pennsylvania Lease shall be resolved by and among such Settlement Class Members. Chesapeake shall have no obligation or responsibility to address or resolve any such disputes, and no payment obligation beyond the distribution required by paragraph 1.b of this Plan of Allocation and Distribution.

(d)    Chesapeake will be entitled to any portion of the Distribution Funds that is attributable to those lessors who have opted out of the Settlement Class. Any other unclaimed portion of the Distribution Funds that remains after payment has been made to the Settlement Class Members shall be distributed as ordered by the Court, to the extent permissible under applicable law.

(e)    The Settlement affects only Chesapeake and/or its Affiliates and does not affect how any other entity calculates and/or pays Royalties.

2.    Heirship Notification Form. Some persons included in the Settlement Class definition may now be deceased ("Deceased Class Members"). In order to assist the Settlement Administrator in the allocation and

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

distribution of funds attributable to the interests of Deceased Class Members, the Settlement Notice mailed to Settlement Class Members will be accompanied by an Heirship/Beneficiary Information Form ("Heirship Form"), which will be substantially in the form of the document attached hereto as Attachment 1. If a Settlement Class Member believes that he or she is entitled to receive all, or some portion, of the settlement funds allocable to a Deceased Class Member under the Plan of Allocation, then the Settlement Class Member will be requested, but not required, to mail to the Settlement Administrator a completed Heirship Form containing the information and documents requested therein.

The provision of an Heirship Form will be requested as an aid to the Settlement Administrator in the distribution of the Settlement Funds, but shall not constitute a required proof of claim form, nor be a condition precedent to the allocation and distribution of settlement monies attributable to a Deceased Class Member's interests. In the absence of an Heirship Form, the Settlement Administrator may, but will not be required to, review records in Defendant's possession, including division orders, transfer orders, probate records, payment records, and like documents, and reasonably attempt to allocate and distribute Settlement Funds attributable to a Deceased Class Member's interest to the person, or persons, who received royalty payments from the Producers as a successor-in-interest to the Deceased Class Member in the ordinary course of business. The Settlement Administrator may also allocate and distribute Settlement Funds attributable to a Deceased Class Member's interests to the estate of the Deceased Class Member, with any such payment to be sent to such mailing address as may be readily ascertainable by the Settlement Administrator.

To the extent a Settlement Class Member is an entity, such as a family limited partnership, that is no longer in existence, such a Settlement Class Member's share of the Distribution Funds shall be distributed to the successor(s) in interest to that entity based on Chesapeake's records.

3.    Distribution of Settlement Proceeds

(a)    Within sixty (60) days after the Effective Date, the Settlement Administrator shall make a determination as to the amounts owed to each Settlement Class Member and shall issue checks to each Settlement Class Member to whom a payment is owed. Chesapeake shall provide data pertaining to Settlement Class Members' historic Royalty deductions for Post-Production Costs within thirty (30) days of the Effective Date.

(b)    The amount of money to be disbursed to each Settlement Class Member will be the Settlement Class Member's allocated share of the Settlement Funds as calculated in accordance with the Plan of Allocation, including any interest earned thereon, reduced by his or her proportionate share of Court-approved Litigation Expenses, Administrative Costs, and Attorneys' Fees, Incentive Award Payments, and any interest earned thereon.

(c)    The Settlement Administrator shall, not less than one year after the Effective Date, determine for the Court the total dollar amount of the distribution checks which were payable to Settlement Class Members but which were not negotiated by the Settlement Class Members for any reason, for example, because a Settlement Class Member could not be located or a Settlement Class Member failed or refused to negotiate his distribution check. All such unclaimed monies shall be transferred to a charitable organization agreed to by Plaintiffs, Plaintiffs-Intervenors, and Defendant.

4.    Disputed Claims.    Any dispute between persons who are, or who purport to be, Settlement Class Members concerning the distribution of a portion of the Distribution Funds shall be resolved by and among such Settlement Class Members. Chesapeake shall have no obligation or responsibility to address or resolve any such disputes, and no payment obligation beyond the distribution required by paragraph 1.b of this Plan of Allocation and Distribution. Such dispute shall not in any way affect, delay, or interfere with, the approval of the settlement or

any distribution to any persons not involved in the dispute, including any distribution to other Settlement Class Members or Class Counsel.

5.        Claims Based Upon Distributions.  No Settlement Class Member shall have any claim against the Class Representatives, Class Counsel, the Settlement Administrator, or Defendant based upon distributions made substantially in accordance with the Settlement Agreement, the Plan of Allocation and Distribution, or orders of the Court, or in good faith reliance on any public records or records provided by Defendant or any other person or entity.

6.        Final Report of Distribution by Settlement Administrator.  Within sixty (60) days after completing full distribution of the Settlement Funds, unless otherwise ordered by the Court, the Settlement Administrator shall file with the Court a Final Report (together with a proposed order approving such report and discharging the Settlement Administrator) indicating that the Settlement Funds have been distributed in accordance with the terms of the Settlement Agreement and the Court's prior orders.

7.        Settlement Administrator.  As used herein and in the exhibits hereto, the term "Settlement Administrator" means any person approved by Lead Class Counsel to administer the Settlement in accordance with the Settlement Agreement, Final Judgment, and this Plan of Allocation and Distribution.

8.        Definitions.  All terms defined in the Settlement Agreement shall have the same meaning when used in this Plan of Allocation and Distribution except as otherwise specified herein.

**ATTACHMENT 1**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BANKRUPTCY COURT**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| **CHESAPEAKE ENERGY** | ) | Case No. 20-33233 (DRJ) |
| **CORPORATION,** *et al.*,1 |  |  |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## CLASS ACTION SETTLEMENT HEIRSHIP/BENEFICIARY INFORMATION FORM

The information in this form is solicited to assist the Settlement Administrator in the allocation and distribution of monies attributable to the interests of persons included in the Settlement Class definition who are now deceased ("Deceased Class Members"). If you are an heir or beneficiary of a Deceased Class Member and thereby believe you are entitled to receive all, or some portion, of the Distribution Funds allocable to a Deceased Class Member under the Settlement Agreement's Plan of Allocation and Distribution, then you are requested to provide the information set forth below. Please sign, notarize and mail the completed form in a postage-prepaid envelope, to the Settlement Administrator listed below, postmarked no later than _____, **2021**.
**You should send your completed form to:**

**Administrator Address**

If you have any questions about this form, please write the Settlement Administrator at the address above, email the Settlement Administrator at email address, or call the Settlement Administrator at N-NNN-NNN-NNNN. Additional blank forms are available for download at settlement website.

---

1 A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

The Heirship Form is requested as an aid to the Settlement Administrator in the distribution of the Distribution Funds, but shall not constitute a required proof of claim form.  In the absence of an Heirship Form, the Settlement Administrator may, but is not required to review records in Chesapeake's possession, including division orders, transfer orders, probate records, payment records, and like documents, in an attempt to reasonably allocate and distribute Distribution Funds attributable to a Deceased Class Member's interests, to the person, or persons, who received Royalty payments from Chesapeake as a successor-in-interest to the Deceased Class Member in the ordinary course of business.  The Settlement Administrator may also allocate and distribute Distribution Funds attributable to a Deceased Class Member's interests to the estate of the Deceased Class Member, with any such payment to be made payable to the estate of the Deceased Class Member and sent to such mailing address for the estate as may be readily ascertainable by the Settlement Administrator.

**Requested Information**

A.      Provide the following information about the person submitting this form:

1.      Current Name:_____

2.      Any different name under which you may have received gas royalty payments from Chesapeake:

_____

3.      Current Address
              Address 1:

_____

              Address 2:

_____

City:          State:  Zip:   _____

4.      Current Telephone Number   (_____)_____-____

B.      Provide the following information about the Deceased Class Member to whom this Heirship Form pertains:

1.  Name:_____

2.  The approximate date of the Deceased Class Member's death:__/_____/ _____

3. Identify each oil and gas lease number under which the Deceased Class Member received royalty payments on gas produced by Chesapeake (if you know).

Lease:_Lease: _____  Lease:_Lease: _____  Lease:_Lease: _____  Lease:_Lease: _____

C.      List the name and address of each person and/or entity who is an heir or beneficiary of the Deceased Class Member and succeeded to the Deceased Class Member's mineral or royalty interests and specify the fractional share (e.g., 1/2, 1/3, etc.) of the Deceased Class Member's interests to which each such person or entity succeeded:
Name: _____ Percentage:    _____
Name: _____ Percentage:    _____
Name: _____ Percentage:    _____
Name: _____ Percentage:    _____

D.     Attach copies of documentation, such as probate documents, transfer orders, division orders, and like documents, which evidence that the undersigned and the persons identified in paragraph C, above, succeeded to the Deceased Class Member's interests.

Your signature on this Heirship Form constitutes a representation that the information contained in this form and the documents provided with the form, are true and correct, to the best of your knowledge, information, or belief.

_____

State of                      County of _____

On _____, _____, before me, a Notary Public in and for said County, personally appeared_____ , who acknowledged that he/she/they did sign the foregoing document and that it is their act and deed.

My commission expires

Signature / Notary Public     Name / Notary Public

7

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BANKRUPTCY COURT

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHESAPEAKE ENERGY CORPORATION, *et al.*,[1] | ) | Case No. 20-33233 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## [PROPOSED] ORDER (I) DIRECTING THE APPLICATION OF RULES 9014, 9019, AND 7023, (II) GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, (III) PRELIMINARILY CERTIFYING A CLASS FOR SETTLEMENT PURPOSES, (IV) APPROVING FORM AND MANNER OF CLASS NOTICE, AND (V) SETTING  DATE FOR FINAL APPROVAL HEARING ON FINAL APPROVAL OF SETTLEMENT

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

Upon the motion (the "Motion") of Chesapeake Energy Corporation ("Chesapeake") for entry of an order (this "Order"): (i) directing the application of Rules 9014, 9019, and 7023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, by incorporation, Rule 23 of the Federal Rules of Civil Procedure (the "Federal Rules"),  (ii) granting preliminary approval of the class action settlement attached as Exhibit 3 to the Motion (the "Settlement Agreement"); (iii) preliminarily certifying a class for settlement purposes, (iv) approving the form and manner of Class Notice to members of the Settlement Agreement, and (v) setting date for final approval hearing on final approval of the settlement, and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a preliminary order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is permissible pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted to the extent set forth herein.

2.   The Settlement Agreement attached as Exhibit 3 to the Motion is hereby preliminarily approved.  The Court preliminarily finds that the Settlement Agreement complies with Federal Rule of Civil Procedure 23 and the Class Action Fairness Act of 2005 ("CAFA") (28 U.S.C. §1715).

3.   The form of the notice to be sent to the Class Members (the "Class Notice") attached to the Settlement Agreement as Exhibit D and the service of the Class Notice by the Epiq Corporate Restructuring LLC (the "Settlement Administrator") to each class Member, at the last known address of each Class Member according to the Debtors' books and records (or as updated by Class Counsel's searches for current addresses or as may otherwise be determined by the Parties) comports with all applicable law and is hereby approved.

4.   The Class Notice shall be mailed by first-class mail, postage prepaid, by the Notice Administrator within 15 business days following the entry of this Order.

5.   The parties shall file motions and memoranda in support of final approval of the Settlement Agreement and Class Counsel shall file their request for attorneys' fees and expense reimbursements on or before _____.

6.   Any member of the Class who wishes to object to or comment on the proposed settlement, or to object to Class Counsel's request for attorney's fees and expense reimbursements, must postmark and mail such objections or comments on or before _____. In accordance with the procedures set forth in the Settlement Notice, any such objections or comments must be mailed to Class Counsel, Chesapeake's counsel, and the Court.

7.   Any member of the Class who wishes to exclude himself or herself from the Class Settlement must postmark and mail the exclusion request to Class Counsel and Chesapeake's counsel no later than _____.

8.  Any class member who wishes to appear and be heard at the final approval hearing must postmark and mail notice of such intention on or before _____.  Notice of such intention must be mailed to Class Counsel, Chesapeake's counsel, and the Court.

9.  On or before _____, Class Counsel and Chesapeake may file a response to any Class Member's objections or comments.

10.  The Court shall conduct the Fairness Hearing on [_____], 2021 at [____].m. to consider final approval of the Settlement Agreement and Class Counsel's request for attorneys' fees and expense reimbursements.  The Court may adjourn the Fairness Hearing without further notice of any kind.

11. This Court retains jurisdiction to construe, interpret, enforce, and implement the Settlement Agreement and this Order.

SO ORDERED this ____ day of _____, 2021.

_____
HON. DAVID R. JONES

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BANKRUPTCY COURT**

There are Proposed Settlements of lawsuits brought on behalf of the Commonwealth of
Pennsylvania ("PA AG Action") and Pennsylvania Royalty Owners against Chesapeake Appalachia,
L.L.C., Chesapeake Energy Corporation and other defendants.

If you have received royalty payments from Chesapeake or you have an existing unexpired
lease with Chesapeake, you may be able to obtain benefits through these Settlements.

***This is a court-authorized Notice.  This is NOT a solicitation from a lawyer.***

Chesapeake Energy and its affiliates have reached settlements with the Pennsylvania
Attorney General's Office and in class actions brought on behalf of oil and gas lessors in
Pennsylvania.  Each of the lawsuits asserts claims that Chesapeake or its affiliates failed to pay
gas royalties consistent with the oil and gas leases and related claims.  Chesapeake denies
these claims, but settled the lawsuits in order to resolve the claims and to establish a new
relationship with its Pennsylvania royalty owners.

| 1.  Why did I receive this Notice? |
| --- |

Records show that you (or someone in your family) have received and/or currently receive royalty
payments from Chesapeake from a natural gas well(s) in Pennsylvania, or that you have an
unexpired lease with Chesapeake that is not currently producing hydrocarbons.

This Court sent you this notice to inform you of three settlement agreements in the following cases:

- The PA AG Action.  This refers to the action brought by the Commonwealth of Pennsylvania
  in *Commonwealth of Pennsylvania v. Chesapeake Energy Corporation*, et al., originally
  brought as Case No. 2015IR0069 (Ct. of Common Pleas, Bradford Cty., Pa.).

- The MEC Action.  This refers to the class action styled *Demchak Partners Limited
  Partnership, et al. v. Chesapeake Appalachia, L.L.C.*, originally brought as Case No. 3:13-
  cv-2289 on the docket of the United States District Court for the Middle District of
  Pennsylvania.

- The Non-MEC Action.  This refers to the class actions styled *Brown v. Access Midstream
  Partners, L.P., et al.*, Case No. 3:14-cv-00591-MEM, and *The Suessenbach Family Limited
  Partnership v. Access Midstream Partners, L.P.*, Case No. 3:14-cv-01197-MEM, both
  originally on the docket of the United States District Court for the Middle District of
  Pennsylvania.

This notice refers to the PA AG Action, the MEC Action, and the Non-MEC Action together as
the "Lawsuits," and it refers to the MEC and Non-MEC Action together as the "Settlement Class
Actions."

The Lawsuits were initially filed in Pennsylvania, but because of Chesapeake's Bankruptcy Filing the settlements are being reviewed by the United States District Court for the Southern District of Texas, Bankruptcy Court.  Judge David R. Jones of the United States District Court for the Southern District of Texas Bankruptcy Court is overseeing these settlements.

## 2.  What are these Lawsuits about?

The Lawsuits claim that Chesapeake underpaid royalties relating to gas produced from wells located in Pennsylvania pursuant to certain provisions of oil and gas leases.  All of the Lawsuits allege that Chesapeake inappropriately deducted certain costs from royalty payments due under oil and gas leases.  Chesapeake denies all allegations but has agreed to settle them based on the time and expense of continuing litigation and in the interest of furthering its relationship with its Pennsylvania lessors.

## 3.  How do I know if I am part of the Settlement?

### PA AG Action Settlement

You are part of the PA AG Action Settlement if you have or have had an oil and gas lease with Chesapeake in Pennsylvania.

### MEC Action Settlement

You are a part of the settlement in the MEC Action if you are or have been a lessor to one or more Pennsylvania Lease(s) that (a) covers a leasehold located in Pennsylvania except for the portions of Southwestern Pennsylvania covered by the Gas Gathering Contract Cost of Service - South Marcellus, (b) contains a Market Enhancement Clause or Ready for Sale or Use Clause, and (c) is or has been owned, in whole or in part, by Chesapeake Appalachia, L.L.C. as a lessee, according to the business records maintained by Chesapeake.

A Market Enhancement Clause ("MEC") is a provision in an oil and gas lease that precludes the lessee (such as Chesapeake) from deducting Post-Production Costs incurred to transform leasehold gas into marketable form, but permits the lessee to deduct a pro-rata share of Post-Production Costs incurred after the gas is marketable if they enhance the value of the marketable gas.

A "Ready for Sale or Use Clause" ("RFSU") is a provision in an oil and gas lease that precludes the lessee from deducting Post-Production Costs to make such gas ready for sale or use but permits the lessee to deduct a pro-rata share of Post-Production Costs incurred after the gas is ready for sale or use.

Excluded from the MEC Settlement Class are: (a) Chesapeake; (b) any person or entity who owns a working interest in or operates a gas well in Pennsylvania; (c) any person or entity who receives royalty in kind pursuant to a Pennsylvania Lease; (d) any person or entity who has previously released Chesapeake from liability concerning or encompassing any or all Settled Claims; (e)

the federal government; (f) legally recognized Indian Tribes; and (g) any person who serves as a judge in these Lawsuits and his/her spouse.

## Non-MEC Action Settlement

You are a part of the settlement in the Non-MEC Action if you are or have been a lessor to one or more Pennsylvania Lease(s) that (a) covers a leasehold located in Pennsylvania except for the portions of Southwestern Pennsylvania covered by the Gas Gathering Contract Cost of Service - South Marcellus, (b) does not contain a Market Enhancement Clause or Ready for Sale or Use Clause, and (c) is or has been owned, in whole or in part, by Chesapeake Appalachia, L.L.C. as a lessee, according to the business records maintained by Chesapeake.

The following individuals, groups, and entities are excluded from the Non-MEC Settlement Class: (a) Defendants; (b) any person or entity who owns a working interest in or operates a gas well in Pennsylvania; (c) any person or entity who receives royalty in kind pursuant to a Pennsylvania Lease; (d) any person or entity who has previously released Chesapeake from liability concerning or encompassing any or all claims that are the subject of the Lawsuit; (e) the federal government; (f) legally-recognized Indian Tribes; (g) the Commonwealth of Pennsylvania and its agencies, in their individual capacities only; and (h) any person who serves as a judge in these Lawsuits and his/her spouse.

## Deceased Class Members

Some persons who are part of the MEC and/or Non-MEC settlements may be deceased ("Deceased Class Members").  To assist the Settlement Administrator in allocating and distributing monies attributable to the interests of Deceased Settlement Class Members, this Notice is accompanied by an Heirship/Beneficiary Information Form ("Heirship Form").  If you believe that you are entitled to all or some portion of the Settlement funds allocable to a Deceased Settlement Class Member, then please mail to the Settlement Administrator a completed Heirship Form.

Some corporations, partnerships, or other entities included in the Class definition may now be dissolved. If you have succeeded to the interest of such a dissolved corporation, partnership, or other entity, you should immediately contact the Settlement Administrator, whose contact information is attached to this Notice.

**If you are a Settlement Class Member and the Judge approves the Proposed Settlement, you will be bound by all orders and judgments of the Court and by the Court's final resolution of the Settlement Class claims in the Lawsuits. See Question 10 for information about your right to comment on or object to the Proposed Settlement.**

## 4.  What do the Settlements provide?

Chesapeake has historically calculated its royalty payments to Pennsylvania landowners based on the "Netback Method."  Under the Netback Method, Chesapeake pays royalties based on the weighted average sales price Chesapeake receives for its production month sales to third parties minus a proportionate share of all the post-production costs Chesapeake incurs, including costs for gathering, compression and transportation.

The PA AG Action Settlement and the Class Action Settlements provide Pennsylvania lessors the right to make an election as to how their royalties will be calculated by Chesapeake in the future. This election does not apply to leases no longer owned by Chesapeake, nor does it apply to the interests owned by any other working interest owner in the lease.

Under the PA AG Action Settlement:

> If you have a lease with a MEC or RFSU clause, you will have the one-time opportunity to select having your future royalties paid at (1) the **higher** of the In-Basin Index Price (50% Leidy Hub and 50% TGP Zone 4) Without Post-Production Deductions or the Netback Price with deductions, whichever price is higher for the production month; or 2) continue to be paid the Netback Price with deductions.

> If you have a lease with a Non-MEC clause, you will have the one time opportunity to select having your future royalties paid at (1) the In-Basin Price (50% Leidy Hub and 50% TGP Zone 4) Without Post-Production Deductions; or 2) continue to be paid the Netback Price with deductions.

> If you have a lease that expressly prohibits deductions, and Chesapeake discovers it has been taking deductions, Chesapeake will discontinue doing so.

Under the Class Action Settlements, if you have a lease with a MEC or RFSU clause, you will have the one-time opportunity to select having your royalties paid at (1) the *higher* of the In-Basin Index Price Without Post-Production Deductions, or the Netback Price; (2) the In-Basin Index Price Without Post-Production Deductions; or (3) the Netback Price, each as defined in the Settlement Agreement(s). To the extent no Election by a Settlement Class Member is received by the Settlement Administrator within five (5) business days after the expiration of the Election Period, such Settlement Class Member will be deemed to have elected Option (1) (i.e., the higher of the In-Basin Index Price Without Post-Production Deductions and the Netback Price).

If your lease does not have a MEC or RFSU clause, you will have the one-time opportunity to elect to select having Chesapeake pay royalties to you based solely on an In-Basin Price without deductions of any costs, or you may elect to have Chesapeake pay royalties to you based solely on the Netback Method.

You will receive a separate mailing explaining how to make your election between the options discussed above after certain specific events occur, including final approval of the Proposed Settlements.

In addition to this right to an election, all three settlements—the PA AG Action Settlement, the MEC Action Settlement, and the Non-MEC Action Settlement—include a cash payment by Chesapeake for distribution to Pennsylvania royalty owners and/or Class Members. The total cash amount to be distributed among the royalty owners and/or Class Members (as applicable) is $5,300,000 for the PA AG Settlement, $5,000,000 for the MEC Settlement Class, and $1,250,000 for the Non-MEC Settlement Class. The amounts distributed to royalty owners under the PA AG Action Settlement will be distributed by the Settlement Administrator in fixed amounts based on lease type, as determined by the Pennsylvania Attorney General's Office. The

amounts distributed to the MEC Settlement Class and Non-MEC Settlement Class will be distributed among the Class Members on a pro rata basis, net of any attorneys' fees and costs awarded by the Court to Class Counsel in the Non-MEC Action.

- You will be eligible for a portion of the payment from PA AG Action Settlement no matter what action you take in response to this notice.

- You will only be eligible for a share of the cash payment being made in the MEC Action and the Non-MEC Action if you (a) qualify as a member of those settlements (see Question 3 above) and (b) you do you not exclude yourself from those settlements (see Question 7, below).  The payments and the manner in which the funds will be distributed is set forth in greater detail in the Settlement Agreements.

## 5.  Can I participate in the PA AG Action Settlement without participating in the Class Action Settlements?

The PA AG Action Settlement and Class Action Settlements are independent settlements. You can participate in the PA AG Action Settlement without participating in the Class Action Settlements.

If you choose, however, to opt out of the Class Action Settlements (see Question 7 below), you will not be entitled to receive any of the Class Settlement funds that will be distributed to class members under the Class Action Settlements

## 6.  What do I need to do to remain the Settlement Class Member in the MEC or Non-MEC Action?

If you are a member of the settlement classes in the MEC and/or Non-MEC Actions and you want to remain a Settlement Class Member, **you do not need to take any action whatsoever.** Class Counsel in the respective actions will represent your interests as a member of the Settlement Class.

## 7.  Can I get out of the Settlement Class in the MEC or Non-MEC Action?

If you do not want to be in a Settlement Class in the MEC or Non-MEC Action and you want to keep the right to sue Chesapeake on your own, you must take steps to get out of the Settlement Class.  This is called excluding yourself from or "opting out of" the Settlement Class.

Chesapeake filed for Chapter 11 bankruptcy on June 28, 2020, and emerged from bankruptcy on February 9, 2021.  As a result, all claims (as defined in the Bankruptcy Code) against Chesapeake arising before February 9, 2021 have been discharged by the bankruptcy court.

To exclude yourself from ("opt out of") the Settlement Class in the MEC or Non-MEC Action, you must send a letter personally signed by you that includes all of the following: (1) Your name, address, and telephone number; (2) Your Chesapeake owner number (if you know it); (3) The following Civil Action Number: 20-33233; and (4) A statement that you want to be excluded from the

Settlement Class, specifying which Settlement Class (MEC Settlement Class or Non-MEC Settlement Class or both) you wish to opt out of.

Your request for exclusion letter must be mailed first class, postage pre-paid, **received on or before** _____, 2021 to the Settlement Administrator, whose contact information is attached to this Notice.

You cannot exclude yourself from only part of the Proposed Settlement or Settlement Class. Also, please remember that you cannot exclude yourself by phone or by sending an email.

## 8.    Do I have lawyers representing my interests in the case?

The Court has appointed the law firms identified in the attachment to this Notice to represent each Settlement Class.  The lawyers representing the Settlement Classes in the MEC and Non-MEC Action are called "Class Counsel."  You do not have to directly pay Class Counsel.  If you want your own lawyer, and to have that lawyer appear in court, you may hire one at your own expense. If you want your own lawyer to speak for you or to appear in Court, you or your lawyer must file a Notice of Appearance.  (See Question 10 to find out how to submit a Notice of Appearance). Class Counsel in each action will request that the Court award them reimbursement of their litigation expenses plus attorneys' fees based on a percentage (not exceeding 33.33%) of the total economic benefit realized by the class members under the settlement agreements.

## 9.    Who are the Class Representatives and how are they compensated?

The Court has appointed Plaintiffs James L. Brown, Alice R. Brown, The Suessenbach Family Limited Partnership, James S. Suessenbach, and Gina M. Suessenbach as Class Representatives for the Non-MEC Settlement Class.  The Court has appointed certain of the Plaintiffs in Demchak as Class Representatives for the MEC Settlement Class.

The Settlement Class Representatives work with Class Counsel on behalf of all Settlement Class Members to present the views of typical Settlement Class Members to Class Counsel and the Court. The Settlement Class Representatives may be entitled to an Incentive Payment Award of no more than $5,000 each.

## 10.  Can I object to or comment on the Proposed Settlement?

If you have comments about, or disagree with, any aspect of the Proposed Settlements, including the Class Action Settlements requested attorneys' fees, you may express your views to the Court through a written response.  Only Class Action Settlement Members who have not opted out can object or comment.  The written comment or objection should include your name, address, telephone number, and Chesapeake owner number(s) (if known).  In addition, any objection must include (a) a written statement of your objection, (b) a written statement of the grounds or reasons for your objection, and (c) copies of any papers, briefs, or other documents supporting your objection.  The document must be signed to ensure the Court's review.  In order to be considered by the Court, your comment or objection must be **received** on or before _____, **2021** and mailed to:

Clerk of the Court
United States District Court, Southern District of Texas
515 Rusk Street
Houston, TX 77002

Your comment or objection must clearly state that it relates to the following civil action number: 20-33233, and must state what specific settlement you are objecting to.

The comment or objection <u>must</u> also be mailed to counsel for Chesapeake, as well as either Larry D. Moffett (if you are a member of and objecting to the MEC Action Class) or Michael D. Donovan (if you are a member of and objecting to the Non-MEC Action Class).  Contact information for all is attached to this Notice.

## 11. Will there be a Hearing on the Proposed Settlements?

The Court will hold a Final Approval Hearing on _____, to consider whether the Proposed Settlements are fair, reasonable, and adequate. The Hearing will be at the United States Courthouse, at _____.  At the Hearing, the Court will decide whether to approve the Proposed Settlements and the Class Action Settlements' motions for attorneys' fees and expenses.  If comments or objections have been received, the Court will consider them at this time.

Attendance is not required, even if you properly mailed a written objection or comment.  If you filed an objection to the Settlement, as long as the objection was received before the deadline, the Court will consider it, regardless of whether you or your privately-retained attorney appear at the Hearing.

If you want to speak or have your own lawyer speak at the Final Approval Hearing, you must give the Court a paper that is called a "Notice of Appearance."  The Notice of Appearance must refer to *In re Chesapeake Energy Corp.*, Case No. 20-33233-DRJ, United States District Court for the Southern District of Texas*,* and state that you or your lawyer wish to enter an appearance at the Final Approval Hearing.  It must also include your name, address, telephone number, and signature.  Your "Notice of Appearance" must be received no later than _____.  You cannot speak at the Hearing if you asked to be excluded from the Proposed Settlement Class in the MEC or Non-MEC Action.

The Notice of Appearance must be filed with the Court at the address provided under after Question 10 above and also mailed to the attorneys listed in Question 10 above.

In addition, your document must clearly state that it relates to the following Civil Action Number: 20-33233.

## 12. How do I get more information about the Proposed Settlement?

If you have additional questions about the Class Action Settlements you may contact the Settlement Administrator.

If you have questions about the PA AG Action Settlement you may contact the Pennsylvania Attorney General's Office at 717-787-4530 or landowners@attorneygeneral.gov.  You can also visit the PA Attorney General Office's website at www.attorneygeneral.gov/public-protection-division/natural-gas-royalty-lawsuit.

All court records, including the Settlement Agreements and other documents for the Lawsuit, may be examined in person and copied at the United States Courthouse, Southern District of Texas, Bankruptcy Division, 515 Rusk Street, Houston, TX 77002.

**Please do not telephone the Court, the Clerk of the Court, or Chesapeake.**

## Contact Information
## MEC Action Class Counsel

Larry D. Moffett
Law Office of Larry D. Moffett, PLLC
P.O. Box 1418
Oxford, MS 38655
larry@larrymoffett.com

Daniel E. Seltz
Lieff, Cabraser, Heimann & Bernstein, LLP
250 Hudson St., 8th Floor
New York, NY 10013

Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, MD 20814

Jonathan Cuneo
Cuneo Gilbert & LaDuca LLP
507 C Street NE
Washington, DC 20002

John W. ("Don") Barrett
Barrett Law Group
Post Office Drawer 927
Lexington, MS 39095

Michelle R. O'Brien
The O'Brien Law Group LLC
2800 Stafford Ave., Box 3034
Scranton, PA 18505

Charles E. Schaffer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 50
Philadelphia, PA 19106

## Non-MEC Action Class Counsel

Noah Axler
Axler Goldich, LLC
1520 Locust St., Suite 301
Philadelphia, PA 19102

Michael D. Donovan
Donovan Litigation Group, LLC
1885 Swedesford Road
Malvern, PA 19355
mdonovan@donovanlitigationgroup.com

Robert E. McCann
McCann & Wall, LLC
Two Penn Center Plaza
1500 JFK Blvd., Ste. 1110
Philadelphia, PA 19102

Joseph H. Meltzer
Tyler S. Graden
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Rd.
Radnor, PA 19807

Robert D. Schaub
Rosenn, Jenkings & Greenwald, LLP
15 South Franklin St.
Wilkes-Barre, PA 18711

## Settlement Administrator

Epiq Corporate Restructuring, LLC
777 Third Avenue, 12th Floor
New York NY 10017
Attn: Robert A. Hopen

## Counsel for Chesapeake

Daniel T. Donovan
Ragan Naresh
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C., 20004
Daniel.donovan@kirkland.com
ragan.naresh@kirkland.com

Daniel T. Brier
Myers, Brier & Kelly LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
570-342-6100
dbrier@mbklaw.com

## Pennsylvania Attorney General

Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120-1410
(717) 787-4530
landowners@attorneygeneral.gov